IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:13-CR-246** |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **YUMA ALCORTA** | : | |

## MEMORANDUM

Presently before the court in the above-captioned action is a pretrial motion (Doc. 266) to dismiss the indictment and suppress identification evidence filed by defendant Yuma Alcorta ("Alcorta"). Alcorta asserts that the initial indictment, and the arrest warrant that issued simultaneously, failed to identify her with sufficient particularity in violation of the Fourth and Fifth Amendments to the United States Constitution. The court will grant Alcorta's motion.

**I.    Factual Background and Procedural History**

On November 6, 2013, a grand jury sitting in Harrisburg, Pennsylvania, returned an indictment against "Bibi LNU"[1] and nine codefendants, charging a number of offenses related to the unlawful smuggling of aliens into the United States. (Doc. 2). Specifically, the indictment charges Bibi LNU and others with conspiracy to commit various alien smuggling offenses, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count I); bringing aliens to the United States at a place other than a designated port of entry, and aiding and abetting same, in violation of 8 U.S.C. § 1324(a)(1)(A)(i) and 8 U.S.C. § 1324(a)(1)(A)(v)(II) (Count II); transporting

---

[1] "LNU" stands for "last name unknown."

aliens, and aiding and abetting same, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 8 U.S.C. § 1324(a)(1)(A)(v)(II) (Count III); and bringing aliens to the United States for the purpose of commercial advantage or private financial gain, and aiding and abetting same, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii)-(iii) and 18 U.S.C. § 2 (Count IV). An arrest warrant for an individual described only as "Bibi LNU" issued the same day. According to the government, evidence before the grand jury indicated that there was a "lady" involved in operating the smuggling house at issue, and that anyone seeking to contact individuals concealed at the house would ask for "Vivi's" phone number.[2] (Doc. 270 at 2). No other identifying information for this individual was presented to the grand jury. (See id.)

On October 23, 2013, federal authorities learned that codefendant Arturo Luna ("Luna") and Alcorta had once been married. (See id. at 2). Law enforcement arrested Luna on November 18, 2013, and he requested that his vehicle be released to Alcorta. (Id. at 2-3). When asked if she knew anyone named "Bibi," Alcorta replied that she did not. (Id.) Several months later, an individual at the Federal Defender's Office in Laredo, Texas, reviewed photos of Luna, his two sisters, and Alcorta; according to the government, this individual identified the photo of Alcorta as "Bibi." (Id. at 3). On that basis, law enforcement arrested Alcorta pursuant to the "Bibi LNU" warrant. (Id.) On March 18, 2014, the government moved to amend the indictment to identify Yuma Alcorta as Bibi LNU. The government argued that the proposed amendment pertained merely to "form" and did not require the

---

[2] The government explains that due to errors in translation, "Bibi" is sometimes referred to in translated summaries of telephone calls as "Vivi."

consent of the grand jury.  During an initial appearance on the same day, a magistrate judge orally granted the government's motion and amended the indictment to identify Alcorta as "Yuma Alcorta a/k/a Bibi."  The court released Alcorta on pretrial supervision to the custody of a third-party custodian.  (See Doc. 139).

Alcorta filed the instant motion (Doc. 266) to dismiss the indictment and to suppress identification evidence on August 30, 2015.  The motion is fully briefed and ripe for disposition.

## II.     Standard of Review

A defendant may move to dismiss a criminal indictment at any time before trial.  See FED. R. CRIM. P. 12(b)(3).  A motion to dismiss the indictment may allege a defect in instituting the prosecution, including improper venue, violation of the constitutional right to a speedy trial, or selective prosecution.  See FED. R. CRIM. P. 12(b)(3)(A).  A motion to dismiss may also be premised on perceived substantive deficiencies, including duplicity or multiplicity in the indictment, lack of specificity, improper joinder, or failure to state an offense.  See FED. R. CRIM. P. 12(b)(3)(B). The court must decide every pretrial motion before trial unless good cause exists to defer its ruling.  See FED. R. CRIM. P. 12(d).

## III.    Discussion

Alcorta's motion tests the constitutional sufficiency of the indictment and arrest warrant against the Fourth and Fifth Amendments.  Alcorta maintains that the initial indictment failed to identify her with a sufficient degree of particularity, that the arrest warrant was likewise flawed, and that the court erred in amending

3

the indictment to include the name "Yuma Alcorta" when the grand jury charged only "Bibi LNU." Alcorta requests dismissal of the indictment—and ostensibly, *vacatur* of the court's order amending same—as well as suppression of the photo identification evidence. The court must first address the threshold question of the sufficiency of the indictment.[3]

The Presentment Clause of the Fifth Amendment to the United States Constitution guarantees that in federal criminal prosecutions, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. CONST. amend. V. The fundamental right to indictment by grand jury was intended "to operate substantially like its English progenitor," the purpose of which was to "provide a fair method for instituting criminal proceedings against persons believed to have committed crimes." Russel v. United States, 369 U.S. 749, 761 (1962) (quoting Costello v. United States, 350 U.S. 359 (1956)). The Fifth Amendment thus ensures that a person's jeopardy is limited "to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."[4] Stirone v. United States, 361 U.S. 212, 218 (1960).

---

[3] The government's opposition brief is silent with respect to the sufficiency of the indictment and the court's order amending same.

[4] Rule 7 of the Federal Rules of Criminal Procedure allows the government to commence certain criminal matters by information when a defendant expressly waives his right to indictment by grand jury. Specifically, Federal Rule of Criminal Procedure 7(b) provides: "An offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant—in open court and after being advised of the nature of the charge and of the defendant's rights— waives prosecution by indictment." FED. R. CRIM. P. 7(b). Alcorta did not waive her right to indictment in the instant matter.

These principles are preserved in more than a century of decisional law.  See <u>Ex parte</u> Bain, 121 U.S. 1, 9-10 (1887); see also Stirone, 361 U.S. at 217-18.

     The Supreme Court has long held that it is the exclusive province of the grand jury to amend the *substance* of its indictment.  See <u>Ex parte</u> Bain, 121 U.S. at 9-10;[5] Stirone, 361 U.S. at 217-18.  In modern practice, rigorous adherence to this principle has yielded to tolerance of *de minimis* defects in form, which are neither substantive nor prejudicial.  See United States v. Fawcett, 115 F.2d 764, 767 (3d Cir. 1940).  In Fawcett, for example, a Third Circuit panel considered whether amending an indictment to identify the defendant as "Harry Nelson otherwise known as Leo Wilson," when the grand jury had indicted only "Harry Nelson," was permissible.  See id. at 765-66.  The court noted that, at common law, an indictment could not be amended whatsoever, except by the grand jury that returned it.  See id. at 766.  The reasoning behind this principle was that "the finding of a grand jury was upon oath and, depending upon this fact amongst others for its validity, could not be amended by the court or the presiding officer in any manner of substance without the concurrence of the grand jury which presented it."  Id. (citations omitted).  The Fawcett panel resolved that amendments in form will not reduce this protection.  The court concluded that a defendant is "in no wise prejudice[d]" by an amendment

---

[5] The Supreme Court in Bain held that any defect in an indictment deprived the court of jurisdiction over the criminal proceeding.  The Court later cabined Bain's breadth.  In United States v. Cotton, 535 U.S. 625 (2002), the Court overruled Bain's holding as to jurisdiction.  See Cotton, 535 U.S. at 867-68 ("Insofar as it held that a defective indictment deprives a court of jurisdiction, Bain is overruled.").  The Court stated, however, that its holding as to jurisdiction does not require it to "retreat from [Bain's] settled proposition . . . that 'an indictment may not be amended except by resubmission to the grand jury.' "  Id. (citing Russel, 369 U.S. 749; Stirone, 361 U.S. 212)).

5

to form, and the Fifth Amendment permits such a change without the consent of the grand jury. Id.

The circuit's inclination in Fawcett is now settled law across the country. See Russel, 369 U.S. at 770 (citing Stirone, 361 U.S. 212; United States v. Norris, 281 U.S. 619 (1930); *Ex Parte* Bain, 121 U.S. 1)). A district court may amend an indictment without consulting the grand jury when "the change is merely a matter of form." Russel, 369 U.S. at 770 (emphasis added); see also United States v. Owens, 334 F. Supp. 1030, 1031 (D. Minn. 1971) ("It is now generally agreed . . . that amendments to an indictment as well as to information are permitted when the change concerns matters of form rather than substance." (citing Russel, 369 U.S. 764; Fawcett, 115 F.2d 764; United States v. Campbell, 235 F. Supp. 94 (D. Tenn. 1964))). The parties at bar agree on this threshold principle. Instead, the dispute *sub judice* presents a more discrete inquiry derived from the hanging "unless" of Russel, to wit: where the line is to be drawn between "form" and "substance" for purposes of the Fifth Amendment's Presentment Clause.

In its initial motion to amend the indictment, the government properly observed that the court "may order amendments of a charging document that relate merely to matters of form." (Doc. 117 at 1 (citing Russel, 369 U.S. at 770)). The government also correctly identified "misnomers or typographical errors" as the frequent and appropriate subject of prosecutorial and judicial amendments. (See id. (citing United States v. Perez, 776 F.2d 797 (9th Cir. 1985); United States v. McGrath, 558 F.2d 1102 (2d Cir. 1977), cert. denied, 434 U.S. 1036 (1978); United States v. Denny, 165 F.2d 668 (7th Cir.), cert. denied, 333 U.S. 844 (1947); Owens, 334

F. Supp. 1030)). The cited cases support exactly that proposition.[6] In Perez, the Ninth Circuit affirmed the amendment of a defendant's name in an indictment, without defense objection, from "Gregorio C. Perez, Jr., aka 'Junior Perez'" to "Junior Cruz Perez," which was "the accused's preferred name." See Perez, 776 F.2d at 798. In Denny, the Seventh Circuit panel affirmed a district court decision granting a government motion to correct a "stenographic mistake," amending an indictment to identify the accused as "Gordon Keith Denny" rather than "Gordon Keith Kenny." Denny, 165 F.2d at 668-70. In Owens, the district court amended an indictment to name "Garland Rush" rather than "Charles Rush" as the accused. Owens, 334 F. Supp. at 1031. As noted *supra*, decisional law within this circuit also supports the government's proposition. See Fawcett, 115 F.2d at 767; see also United States v. Beato-Herrera, No. 1:15-CR-153, Doc. 37 (Conner, C.J.) (granting government's motion to correct an "inadvertent typographical error" and amend defendant's surname from "Beato-Hererra" to "Beato-Herrera").

This memorandum does not disturb the settled principle that a misnomer or misspelling may be corrected without the grand jury's consent. Rather, the existing body of law guides the court by distinction. Each decision discussed *supra* allowed amendment where a grand jury clearly intended to identify a specific person and inadvertently included a misnomer or misspelling in its indictment. Taking the

---

[6] The government's motion to amend relied on two related types of cases: those passing on an alteration to the name of the person charged, see, e.g., Perez, 776 F.2d at 800; Denny, 165 F.2d at 669-70; Owens, 334 F. Supp. at 1031, and those discussing amendment of other misnomers in the indictment, for example, the name of a defendant's employer, see McGrath, 558 F.2d at 2204-05. The court's analysis focuses solely on the former category. See Campbell, 235 F. Supp. at 96 ("There is a distinction between the misnomer of a defendant and the misnomer of a nondefendant in an indictment.").

7

latter first, "Yuma Alcorta" is markedly different from "Bibi" and cannot fairly be considered a mere misspelling. Cf. Perez, 776 F.2d at 800 (amendment allowed when "it differed little from the original 'aka'"). See also Denny, 165 F.2d at 669-70 ("Gordon Keith Kenny" to "Gordon Keith Denny"); Owens, 334 F. Supp. at 1031 ("Charles Rush" to "Garland Rush"). As to the former, the grand jury apparently did not receive any information that would allow it to connect the person Yuma Alcorta and the name Bibi. The *only* evidence in existence when the grand jury returned its indictment was that a "lady" was involved in operating the house and that "callers ask for 'Vivi's' phone number" to contact someone concealed there. (Doc. 270 at 2). The information supporting the government's assumption that Alcorta is Bibi was received months *after* the indictment was returned. (See id. at 2-3). Under these circumstances, the court cannot conclude that use of the name "Bibi" was a mere misnomer by a grand jury intending to identify Alcorta.[7]

    Notably absent from the above collection of cases is any judicial decision allowing the court or the prosecutor to amend an indictment and to supply an identity when the grand jury did not. The court's own research reveals only two district court decisions which appear, at first blush, to support such a proposition. In Owens, the District Court for the District of Minnesota opined that "a person may be indicted merely as a John Doe until his true name becomes known and then amendment may be allowed." Owens, 334 F. Supp. at 1031 (citing Campbell, 235 F.

---

[7] Alcorta emphasizes this distinction in her brief, but the government offers no response. (See generally Doc. 270).

Supp. at 96).[8]  In Campbell, the only decision cited by the Owens court, the District Court for the Eastern District of Tennessee stated without jurisprudential support that "a person may well be indicted, without the mention of any name, and designating him as a person whose name is to the grand jurors unknown." Campbell, 235 F. Supp. at 96.  These passing observations were irrelevant to the holdings in Campbell and Owens, each of which involved classic misnomers.[9]  The courts' *obiter dictum* is thus inapposite.

The suggestion that a court may amend an indictment to identify the accused solely on the basis of extrinsic evidence—unknown to the grand jury and not in existence at the time it convened—finds no support in the law.  Such a rule would render the guarantee of indictment by a grand jury a legal nullity.  Indeed, it would authorize the Kafkaesque return of an indictment without the identification of a perpetrator, relinquishing the duty of naming the accused to the unfettered discretion of law enforcement.  This notion is entirely counter to the principle that a person is entitled to be "charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."  Stirone, 361 U.S. at 218.  To extend the existing case law in this way would "fritter[] away" the protections

---

[8] The Owens court also observed that "a name in an indictment is a matter of form and not substance."  Owens, 334 F. Supp. at 1031 (citing Fawcett, 115 F.2d at 767; Campbell, 235 F. Supp. at 96).  As discussed *passim*, the court concludes that a name and an identity are materially distinct for purposes of the Fifth Amendment right to indictment by grand jury.

[9] In the 51 years since Campbell was decided, only one other district court has acknowledged its holding; that decision also involved obvious typographical errors.  See United States v. Evans, No. 13-cr-101, 2013 U.S. Dist. LEXIS 164319, at *1 (E.D. Tenn. Nov. 19, 2013) (amending first name "Corey" to "Cory").

ensured by the Fifth Amendment, placing "the rights of the citizen, . . . intended to be protected by the constitutional provision, at the mercy or control of the court or the prosecuting attorney." Russel, 369 U.S. at 771.[10]

No special circumstances mitigate this violation of Alcorta's right to indictment by a grand jury. Alcorta did not consent to the amendment of the indictment. Cf. Perez, 776 F.2d at 800. Nor did she waive her right to indictment by a grand jury. Cf. United States v. Aparicio, No. 5:08-CR-7, 2008 WL 4201069, at *1 n.1 (W.D. Va. Sept. 9, 2008). See also FED. R. CRIM. P. 7(b). Alcorta disputes whether she is in fact Bibi and, as such, this is not the case contemplated by Fawcett where "no question of the identity of the defendant is involved." Fawcett, 115 F.2d at 766.

---

[10] In the Fourth Amendment context, courts routinely invalidate arrest warrants which insufficiently identify a defendant. In United States v. Doe, 703 F.2d 745 (3d Cir. 1983), for example, the Third Circuit panel concluded that a warrant was facially invalid when it identified the defendant only as "John Doe, a/k/a 'Ed,'" observing that the warrant differed from an impermissible "'John Doe' warrant only insofar as it contains the first name 'Ed.'" Id. at 747 (citing West v. Cabell, 153 U.S. 78, 86-87 (1894); United States v. Jarvis, 560 F.2d 494, 497 (2d Cir. 1977), cert. denied, 435 U.S. 934 (1978); United States v. Swanner, 237 F. Supp. 69, 71-72 (E.D. Tenn. 1964); United States v. $1,058 in U.S. Currency, 210 F. Supp. 45, 48-49 (W.D. Pa. 1962), aff'd on other grounds, 324 F.2d 211 (3d Cir. 1963)). The court rejected the government's contention that the name "Ed" was sufficiently specific to satisfy the Fourth Amendment, emphasizing that "it was [the agent], and not the grand jury or the magistrate, who ultimately determined that appellant was the person named in the indictment and the bench warrant." Id. at 750. The panel also rejected the argument that an arrest warrant falling short of Fourth Amendment standards may be cured "by extrinsic evidence" later obtained by law enforcement. Id. We acknowledge the unique and separate purposes served by the Fourth and Fifth Amendments. Nonetheless, the court conceives of no justification for affording the fundamental right to indictment by a grand jury *less* protection than the right to a particularized warrant.

**IV.** **Conclusion**

For the foregoing reasons, the court will grant Alcorta's motion (Doc. 266) to dismiss the indictment.[11]  An appropriate order shall issue.

       /S/ CHRISTOPHER C. CONNER
       Christopher C. Conner, Chief Judge
       United States District Court
       Middle District of Pennsylvania

Dated:     November 3, 2015

---

[11] Because the indictment will be dismissed as to Alcorta, the court will not address Alcorta's Fourth Amendment suppression arguments at this juncture.